UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ERNESTINE BAKER, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CAROLYN W. COLVIN, ) <br> Acting Commissioner of Social Security, ) <br> ) <br> Defendant. ) <br> ) | Case No. 4:15-CV-1335 JAR |

**MEMORANDUM AND ORDER**

This is a *pro se* action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying Ernestine Baker's ("Baker") application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.*, and supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381-85.

**I.     Background**

On March 21, 2012, Baker protectively filed an application for disability insurance and supplemental security income benefits, alleging disability beginning June 1, 2010. (Tr. 139-151) The Social Security Administration ("SSA") denied her claims on May 16, 2012. (Tr. 67-80) She filed a timely request for a hearing before an administrative law judge ("ALJ") on June 5, 2012. (Tr. 91-95) Following a hearing on October 21, 2013 (Tr. 32-66), the ALJ issued a written decision on March 24, 2014, upholding the denial of benefits. (Tr. 16-27) Baker requested review of the ALJ's decision by the Appeals Council. (Tr. 12)   On June 24, 2015, the Appeals

Council denied her request for review. (Tr. 1-7) Thus, the decision of the ALJ stands as the final decision of the Commissioner. See Sims v. Apfel, 530 U.S. 103, 107 (2000).

Baker filed this appeal pro se on August 27, 2015. (Doc. No. 1) The Commissioner filed an Answer. (Doc. No. 10) Baker failed to file a brief in support of her Complaint pursuant to the Court's case management order. (Doc. No. 5) Accordingly, the Court gave Baker ten days to file a written statement of the reasons why she believes the Commissioner erred in her decision denying her application for benefits. (Doc. No. 12) The Commissioner was given twenty days after the service of Baker's statement to file a brief in support of the answer and Baker was given seven days after service of the Commissioner's brief to file a reply. (Id.) Baker filed her written statement on August 16, 2016. (Doc. No. 13) The Commissioner filed a brief in support of the answer on September 1, 2016. (Doc. No. 14) Baker did not file a reply.

## II.     Decision of the ALJ

The ALJ determined that Baker met the insured status requirements of the Social Security Act through March 31, 2016, and had not engaged in substantial gainful activity since June 1, 2010, the alleged onset date of disability. (Tr. 18) The ALJ found Baker had the severe impairments of degenerative disc disease and anemia, but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 18-19)

After considering the entire record, the ALJ determined Baker had the residual functional capacity ("RFC") to perform light work as defined in the regulations except for the following limitations: can never climb ropes, ladders, or scaffolds; can only occasionally climb ramps and stairs; can stoop, kneel, crouch and crawl occasionally to frequently; and should avoid concentrated exposure to heat. (Tr. 19) The ALJ found Baker unable to perform any past relevant

work, but that there are jobs that exist in significant numbers in the national economy that she can perform. (Tr. 25) Thus, the ALJ concluded that Baker is not disabled. (Tr. 27)

## III. Administrative Record

The following is a summary of the relevant evidence before the ALJ.

### A. Hearing Testimony

The ALJ held a hearing in this matter on October 21, 2013. (Tr. 32-66) The ALJ heard testimony from Baker, who was represented at the hearing by counsel, and Dale A. Thomas, a vocational expert.

#### 1. Baker's testimony

From 2000 to 2007, Baker was a school bus driver. (Tr. 46) She stopped driving because she was having problems "off and on" with her back. (Tr. 46-47) In 2011, she worked part-time in patient care and as a home health aide. (Tr. 47) It was Baker's testimony that she is unable to work due to her herniated disc, chronic arthritis in her knees, her blood pressure and anemia. (Tr. 44) It hurts to sit or walk for a long period of time. (Tr. 45) She can walk less than a block due to her back and leg pain and cannot bend over to touch her toes. (Tr. 58) She experiences chest tightness twice a week. (Tr. 57) She has headaches every day, which she thinks may be due to her blood pressure. (Id.) Her doctors put her on Tylenol. (Id.) Baker testified that her doctor restricted her from lifting more than 25 pounds. (Tr. 55-56)

Baker is divorced and living alone in an apartment. (Tr. 40) She completed the ninth grade. (Tr. 61) Her daughters help her financially. (Tr. 40-41, 44) They take her grocery shopping and to pick up her medications. (Tr. 41, 44) Baker has a driver's license but doesn't drive because she is concerned about the side effects from the medications she takes for pain. The medications help, but leave her feeling sleepy and fatigued. (Tr. 41, 51) Baker's

hypertension is controlled with medication when she is compliant. (Tr. 49) Her anemia has improved now that she is taking Vitamin D. (Tr. 51) She also has problems sleeping due to her thyroid, but just takes vitamins for the condition. (Tr. 51) Baker also mentions sleep apnea, but there is no test confirming that in the record. (Tr. 52)

Baker does all of her own housework, including cooking and laundry. (Tr. 42, 43) She can bathe and dress herself. (Tr. 58) On a typical day, she sits in a quiet room by herself watching television. (Tr. 52) She doesn't have a computer at home, but she will read. (Id.) She also spends time with her grandchildren. (Tr. 52-53)

### 2. Testimony of Vocational Expert

Vocational expert Dale Thomas classified Baker's work history as school bus driver, Dictionary of Occupational Titles (DOT) No. 913.463-010, as medium, semi-skilled work, with a specific vocational preparation (SVP) of 4; and caregiver, DOT No. 354.377-014, as medium, semi-skilled work, with an SVP of 3. (Tr. 61) Thomas testified that with respect to school bus driver, there are no transferable skills to light work. (Id.)

For the first hypothetical, the ALJ asked Thomas to assume an individual of the claimant's age, limited education, and past work experience who is limited to light exertional work, can never climb ropes, ladders or scaffolds; can occasionally climb ramps and stairs; occasionally stoop, kneel, crouch and crawl; and must avoid concentrated exposure to extreme heat. He opined that such a person would be unable to perform any of Baker's past work because that work was a greater exertional level. (Tr. 62) Such a person would, however, have the ability to adjust to and perform other work, such as an electronics worker, DOT 726.687-010, light, unskilled, with approximately 114,000 of these jobs nationally and 4,000 locally. (Id.)

4

The second hypothetical included a sit/stand option, defined as having to change positions for a short time every 30 to 60 minutes, but not to exceed two hours sitting or six hours standing. (Tr. 62-63) Thomas opined that with the sit/stand option, the number of available electronics worker jobs is reduced to 80,000 such jobs nationally and 2,800 locally. (Id.) Thomas further testified that another example of other work would be bottling line attendant, DOT No. 920.687-042, light, with an SVP of 2. (Tr. 63) Without the sit/stand option, there are 56,000 such jobs nationally and 800 locally; with the sit/stand option, there are 39,000 nationally and 570 regionally. (Id.)

The ALJ asked Thomas to assume that under either hypothetical, a person would be off task about ten percent of the time. Thomas responded that this percentage is within an acceptable tolerance and thus these jobs would not be impacted. (Tr. 63-64) If such a person was off task 20 percent of the time, Thomas indicated that those jobs would not be available. (Tr. 64) Likewise, absences of twice a month would be excessive and the jobs would not be available. (Id.) It was Thomas' opinion that even one day a month would be unacceptable. The acceptable tolerance would be ten total working days per year. (Id.)

### B. Medical Records

The ALJ summarized Baker's medical records at Tr. 20-24. Relevant medical records are discussed as part of the analysis. At the time of hearing, the record contained no objective evidence of any musculoskeletal impairment, with only a negative x-ray of Baker's right knee. (Tr. 20, 304, 321) As a result, the ALJ sent Baker for x-rays of her back and knees (Tr. 20-21, 65-66, 581-84), the results of which are discussed as part of the analysis.

**IV. Standards**

The Social Security Act defines as disabled a person who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); see also Brantley v. Colvin, No. 4:10CV2184 HEA, 2013 WL 4007441, at * 2 (E.D. Mo. Aug. 2, 2013). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(B).

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920(a), 404.1520(a). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). First, the claimant must not be engaged in "substantial gainful activity." 20 C.F.R. §§ 416.920(a), 404.1520(a). Second, the claimant must have a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(c), 404.1520(c). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v.

Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001).

Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

Before considering step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is defined as "the most a claimant can do despite [his] limitations." Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). At step four, the ALJ determines whether the claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); McCoy v. Astrue, 648 F.3d 605, 611 (8th Cir. 2011). If the claimant can still perform past relevant work, he will not be found to be disabled; if the claimant cannot, the analysis proceeds to the next step. Id.

At step five, the ALJ considers the claimant's RFC, age, education, and work experience to see if the claimant can make an adjustment to other work in the national economy. 20 C.F.R. §§ 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, then he will be found to be disabled. 20 C.F.R. §§ 416.920(a)(4)(v), 404.1520(a)(4)(v).

Through step four, the burden remains with the claimant to prove that he is disabled. Brantley, 2013 WL 4007441, at *3 (citation omitted). At step five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. Id. "The ultimate burden of persuasion to prove disability,

however, remains with the claimant." Meyerpeter v. Astrue, 902 F. Supp.2d 1219, 1229 (E.D. Mo. 2012) (citations omitted).

The court's role on judicial review is to determine whether the ALJ's findings are supported by substantial evidence in the record as a whole. Pate–Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009). In determining whether the evidence is substantial, the court considers evidence that both supports and detracts from the Commissioner's decision. Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007). As long as substantial evidence supports the decision, the court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. See Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002).

To determine whether the ALJ's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

(1) The findings of credibility made by the ALJ;
(2) The education, background, work history, and age of the claimant;
(3) The medical evidence given by the claimant's treating physicians;
(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;
(5) The corroboration by third parties of the claimant's physical impairment;
(6) The testimony of vocational experts based upon prior hypothetical questions which fairly set forth the claimant's physical impairment; and
(7) The testimony of consulting physicians.

Brand v. Sec'y of Dept. of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980).

**V. Discussion**

Baker's argument on appeal is that the ALJ failed to properly consider and account for her herniated disc and related symptoms in her RFC determination. (Doc. No. 13) The

Commissioner takes the position that the ALJ's residual functional capacity ("RFC") finding is supported by substantial evidence.

A claimant's RFC is defined as the most an individual can do despite the combined effects of all of his or her credible limitations. Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). The ALJ must determine a claimant's RFC based on all of the record evidence, including the claimant's testimony regarding symptoms and limitations, the claimant's medical treatment records, and the medical opinion evidence. See Voegtlin v. Colvin, No. 4:11CV1980 HEA, 2014 WL 651378, at *4 (E.D. Mo. Feb. 19, 2014) (citing McCoy v. Astrue, 648 F.3d 605 (8th Cir. 2011)). An ALJ may discredit a claimant's subjective allegations of disabling symptoms to the extent they are inconsistent with the overall record as a whole. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984); 20 C.F.R. § 404.1529; SSR 96–7p. It is the claimant's burden, not the Commissioner's, to prove the claimant's RFC. See Harris v. Barnhart, 356 F.3d 926, 930 (8th Cir. 2004); McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000).

The ALJ found that while Baker's medically determinable impairments could reasonably be expected to cause symptoms, her statements and testimony regarding the intensity, persistence and limiting effects of those symptoms were not credible to the extent they are inconsistent with the RFC assessment. (Tr. 21) In evaluating a claimant's credibility, the ALJ is required to apply the factors from Polaski, 739 F.2d at 1322, which include the claimant's daily activities; the duration, frequency, and intensity of pain; dosage, effectiveness, and side effects of medications and medical treatment; and the claimant's self-imposed restrictions. The claimant's relevant work history and the absence of objective medical evidence to support the complaints may also be considered, and the ALJ may discount subjective complaints if there are inconsistencies in the

9

record as a whole. Choate v. Barnhart, 457 F.3d 865, 871 (8th Cir. 2006) (citing Wheeler v. Apfel, 224 F.3d 891, 895 (8th Cir. 2000)). The ALJ may not, however, discount a claimant's allegations of disabling pain simply because the objective medical evidence does not fully support those claims. O'Donnell v. Barnhart, 318 F.3d 811, 816 (8th Cir. 2003). The Court will uphold an ALJ's credibility findings, so long as they are adequately explained and supported. Ellis v. Barnhart, 392 F.3d 988, 996 (8th Cir. 2005).

Here, the ALJ identified several reasons for discounting Baker's credibility. First, Baker's medical treatment records did not support her allegations. Although the ALJ found that Baker had the severe impairment of degenerative disc disease (Tr. 18, 21-22, 582), physical examinations revealed few resulting physical limitations (Tr. 22). In June 2010, Baker's back/spine was non-tender, and she exhibited no motor or sensory deficits. (Tr. 290) No abnormalities of the back/spine were noted during examination in July 2010. (Tr. 293) Baker exhibited paravertebral muscle spasm as well as tenderness and limited range of motion in December 2010 (Tr. 297, 301); however, she reported that her symptoms were relieved by movement such as stretching and over the counter medication such as acetaminophen. (Tr. 295, 300, 464) A year later, in December 2011, Baker's musculoskeletal examination was normal. (Tr. 324) Examinations of her back/spine in March 2012 and February 2013 were normal (Tr. 351, 565), as was a musculoskeletal examination in June 2012 (Tr. 562). Similarly, Baker alleged severe knee pain, but examinations of her knees were normal. (Tr. 21, 37, 44, 304-05, 321, 482, 544) X-rays ordered by the ALJ and performed in November 2013 noted degenerative disc disease with facet arthrosis at L5-S1. Arthrosis was noted at L3-L5, but the spine was otherwise intact. X-rays of the right and left knees were negative. (Tr. 22, 582-84) Moreover, none of Baker's treating physicians imposed any significant restrictions on her functional

capacity for twelve consecutive months in duration. (Tr. 22) The absence of an objective medical basis to support the degree of subjective complaints is an important factor in evaluating the credibility of the claimant's testimony and complaints. Russell v. Sullivan, 950 F.2d 542, 545 (8th Cir. 1991). See also Forte v. Barnhart, 377 F.3d 892, 895 (8th Cir. 2004).

The ALJ further found Baker's minimal treatment and history of noncompliance undermined her overall credibility. (Tr. 24) The record contained numerous instances of Baker's noncompliance with treatment, medication, diet, and exercise. (Tr. 285-86, 334, 444) She was frequently out of medication for a few days to a few months. (Tr. 349, 407-08, 439, 445, 464, 481, 543) She cancelled scheduled tests and did not follow up with specialty clinic appointments. (Tr. 24, 439, 517, 543, 560) Noncompliance with treatment is another proper factor in the credibility analysis. See Holley v. Massanari, 253 F.3d 1088, 1092 (8th Cir. 2001).

It also appeared from the record that Baker underreported the extent of her alcohol use. (Tr. 24) In March 2012, Baker presented at an emergency room with complaints of chest tightness, shortness of breath, coughing and vomiting blood. (Tr. 407) The examining physician indicated that Baker's symptoms were consistent with esophageal varices and her elevated liver enzymes suggested she had been drinking more than she admitted. (Tr. 408-09) Baker's daughter also stated that Baker underreported her alcohol use. (Tr. 352, 408-09) An ALJ may discount a claimant's testimony due to inconsistencies in the record. Karlix v. Barnhart, 457 F.3d 742, 748 (8th Cir. 2006).

In addition, the ALJ noted that despite purportedly hurting her back in 1999, Baker's earnings records show she had her best earnings from 2000 through 2007. (Tr. 24, 46) The ability to maintain employment with an impairment, together with the absence of evidence that the condition has significantly deteriorated, tends to prove the impairment was not disabling. See

Goff, 421 F.3d at 792 (the fact that claimant worked with impairments for over three years after her strokes without significant deterioration demonstrated her impairments were not disabling in the present.). See also Orrick v. Sullivan, 966 F.2d 368, 370 (8th Cir. 1992).

Lastly, the ALJ noted that although Baker had alleged impairment due to stroke, there was no medical evidence of record of stroke. (Tr. 24, 209-15) Evidence of exaggeration weighs against a claimant's reports of disabling symptoms. Baker v. Barnhart, 457 F.3d 882, 892 (8th Cir. 2006).

The Court finds the ALJ considered Baker's subjective complaints on the basis of the entire record and set out numerous inconsistencies that detracted from her credibility. Because the ALJ's determination is supported by good reasons and substantial evidence, the Court defers to her determination. Cobb v. Colvin, No. 2:13CV0115 TCM, 2014 WL 6845850, at *14 (E.D. Mo. Dec. 3, 2014) (internal citations omitted). See also Polaski, 739 F.2d at 1322.

With regard to the opinion evidence, the ALJ noted that none of Baker's treating or attending physicians rendered opinions regarding her functioning. (Tr. 25) The record did contain a medical evaluation/case analysis prepared by a single decision maker ("SDM") (Tr. 67-85) and a Disability Determination Transmittal and Notice of Disapproved Claims (Tr. 86-90), which the ALJ must evaluate as expert opinion evidence of non-examining sources at the hearing level. 20 C.F.R. §§ 404.1527, 416.927; SSR 96-6p. Based on a review of the medical and non-medical evidence, these sources determined that despite her restrictions, Baker is not disabled. The ALJ noted that neither the SDM nor the State Agency consultants preparing the other documents had the additional evidence at the hearing level available, i.e., the x-ray images of Baker's back and knees ordered by the ALJ. Nevertheless, the ALJ found these opinions were partially consistent with the record as a whole as discussed in her findings and gave them some

weight. (Tr. 25) This demonstrates that the ALJ based her RFC determination on the record as a whole, and not simply on her analysis of Baker's credibility.

In summary, the Court finds and concludes there was substantial evidence to support the ALJ's RFC determination. Having properly determined Baker's RFC, the ALJ consulted with a vocational expert, who noted that Baker's past work as a school bus driver and caregiver was performed at a medium exertional level, and determined that her current RFC precluded the performance of her past work. (Tr. 61) The ALJ then posed a hypothetical question to the vocational expert that included all of the limitations found in the ALJ's RFC determination. (Tr. 61-62) In response, the vocational expert opined that such a person could perform jobs such as electronics worker and bottling line attendant, all of which exist in significant numbers in the national economy. (Id.) In response to a second hypothetical that included a greater limitation that the ALJ's RFC determination, namely a sit/stand option, the vocational expert testified that such a person could still perform these two jobs, although the number of available jobs would be reduced. (Tr. 62-63) Because the hypothetical accounted for all of Baker's credible functional limitations, the ALJ properly relied on the vocational expert's testimony to find Baker was not disabled at step five of the sequential evaluation process. Milam v. Colvin, 794 F.3d 978, 985 (8th Cir. 2015).

**VI. Conclusion**

For the foregoing reasons, the Court finds the ALJ's decision is supported by substantial evidence contained in the record as a whole, and, therefore, the Commissioner's decision should be affirmed.

Accordingly,

13

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED** with prejudice. A separate judgment will accompany this Order.

Dated this 29th day of September, 2016.

_/s/ John A. Ross_
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**